JS-6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, A California non-profit corporation, COASTKEEPER ALLIANCE, A California non-profit corporation,<br><br>            Plaintiffs,<br><br>    v.<br><br>ESTES EXPRESS LINES, INC., a Maryland corporation,<br><br>            Defendant. | Civil Case No: 2:22-cv-07542-FLA-PVC<br><br>**CONSENT DECREE**<br><br><br>**(Federal Water Pollution Control Act, <u>33 U.S.C. §§ 1251</u> *et seq*.)** |

# CONSENT DECREE

The following Consent Decree is entered into by and between Los Angeles Waterkeeper ("Waterkeeper"), California Coastkeeper Alliance ("Coastkeeper") (together "Plaintiffs") and Estes Express Lines, Inc. ("Estes"). The entities entering this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS** Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its primary office in Santa Monica, California;

**WHEREAS** Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its primary office in San Francisco, California;

**WHEREAS** Waterkeeper and Coastkeeper are dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS** Estes is the owner and operator of a freight terminal located at 14727 Alondra Blvd., La Mirada California, hereinafter referred to by the Settling Parties as the "La Mirada Terminal";

**WHEREAS**, The Estes La Mirada Terminal is an establishment engaged in furnishing "over-the-road" trucking services or trucking services and storage services, including household goods either as common carriers or under special or individual contracts or agreements, for freight generally weighing more than one hundred pounds;

**WHEREAS**, Plaintiffs acknowledge that Estes recently submitted an updated SWPPP to the State Board that characterizes portions of the Facility as non-industrial and therefore, Estes contends, those portions of the Facility are not subject to the requirements of the Stormwater Permit (as defined below), and Plaintiffs dispute this contention;

**WHEREAS**, Estes contends that neither the IGP nor the federal NPDES program

for industrial activities apply to drainages at transportation facilities that are not associated with specified industrial activities, and Plaintiffs dispute this contention, but the Settling Parties have compromised to allow for settlement of this matter notwithstanding said disagreement, with the parties' legal obligations to each other defined by this Agreement, and each party reserving all rights unless expressly stated to the contrary herein;

WHEREAS, Plaintiffs' members live and/or recreate in and around waters which Plaintiffs' members allege receive discharges from the La Mirada Terminal to the Los Angeles County municipal storm sewer system, and into waters of the United States, including Coyote Creek and its tributaries (collectively the "Receiving Waters"), and contends that those discharges are regulated by the Clean Water Act, Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, subject to the Settling Parties' disagreement discussed above, storm water and non-storm water discharges associated with industrial activities from the La Mirada Terminal are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as superseded  by Order No. 2014-0057-DWQ and amended by Order No. 2015-0122 – DWQ and Order 2018-0028-DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS the La Mirada Terminal operates under SIC code 4213—Trucking Except Local with the Waste Discharge Identification ("WDID") number of 419I007131;

WHEREAS, Defendant's interpretation of regulated industrial activities occurring at the La Mirada Terminal include vehicle maintenance and fueling in the Southern Drainage Area as depicted on the Site Plan attached hereto as **Exhibit A**;

WHEREAS, the Storm Water Permit includes the following requirements for those regulated activities occurring at the La Mirada Terminal: (1) develop and

implement a stormwater pollution prevention plan ("SWPPP"), (2) control pollutant discharges associated with industrial activities using, as appropriate, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and, (4) when necessary, implement additional BMPs to prevent or reduce any pollutants  associated with industrial activities that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on February 10, 2022, Plaintiffs sent Estes, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Los Angeles Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the La Mirada Terminal;

WHEREAS, on October 17, 2022, Plaintiffs filed a complaint against Estes in the United States District Court, Central District of California alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the La Mirada Terminal ("Complaint");

WHEREAS, Plaintiffs allege Estes to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the La Mirada Terminal;

WHEREAS, Estes denies all allegations in the Notice Letter and Complaint relating to the La Mirada Terminal;

WHEREAS, Plaintiffs and Estes have agreed that it is in the Settling Parties' mutual interest to enter a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint with respect to the La Mirada Terminal without further proceedings; and

**WHEREAS** all actions taken by the Parties pursuant to this Consent Decree shall comply with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).

2. Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the La Mirada Terminal is located within this District.

3. The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1) and the Summons and Complaint shall be deemed served pursuant to Fed. R. Civ. P. 4.

4. Plaintiffs have standing to bring this action.

5. The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.    OBJECTIVES

6. It is the express purpose of the Settling Parties entering this Consent Decree to further the objectives set forth in the Clean Water Act and to resolve those issues alleged by Plaintiffs in their Complaint. Considering these objectives and as set forth fully below, Estes agrees to comply with the provisions of this Consent Decree and to comply with the applicable requirements of the Storm Water Permit and all applicable provisions of the Clean Water Act at the La Mirada Terminal.

## II.    AGENCY REVIEW AND TERM OF CONSENT DECREE

7. Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final

signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which Plaintiffs shall provide to Estes. If the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. Following the Federal Agencies' review, the Settling Parties shall submit the Consent Decree to the Court for entry.

8.      The term "Effective Date" as used herein shall mean the day that the Court enters this Consent Decree.

9.      This Consent Decree will terminate three (3) years from the Effective Date, unless prior to the termination date either Party has invoked the dispute resolution provisions of this Consent Decree and there is an ongoing, unresolved dispute regarding either Party's compliance with this Consent Decree, in which case the Consent Decree will terminate upon final resolution of the dispute pursuant to the dispute resolution provisions contained herein.

## III.      COMMITMENTS OF THE SETTLING PARTIES

10.      The Settling Parties acknowledge that Estes is in the process of making changes to the La Mirada Terminal to improve the quality of storm water discharges from the portions of the Facility (Advanced Treatment BMPs) depicted in **Exhibit B.**

11.      Within sixty (60) days of the Effective Date (unless such timeframe is extended by mutual consent of the Parties), Estes will design, construct, and operate the Advanced Treatment BMPs set forth in **Exhibit B**, in accordance with accepted industry standards, to treat stormwater from drainage area SW-2 from the 85th Percentile Storm Event to meet all applicable Numeric Action Levels ("NALS") and Numeric Effluent Limitations ("NELS") as set forth in the Storm Water Permit.

12.      Within thirty (30) days of completion of construction of the Advanced Treatment BMPs as described in **Exhibit B**, Estes will provide Plaintiffs with a

certification signed by Estes QISP certifying that Estes built the Advanced Treatment BMP in conformity with applicable design drawings and permits. Estes shall allow Plaintiffs to conduct a site inspection in compliance with Section IV below within thirty (30) days of receipt of the certification of completion of the project as shown in **Exhibit B**. If Estes determines that it is infeasible to implement the Advanced Treatment BMPs described above pursuant to the force majeure provisions set forth in paragraph 44 below, Estes and Plaintiffs shall meet and confer to discuss the feasibility of alternative Advanced Treatment BMPs within thirty (30) days of the determination of infeasibility, but no later than 45 days following the Effective Date. Should the Settling Parties be unable to agree on an alternative to the Advanced Treatment BMPs, either party may initiate the dispute resolution procedures described herein.

A.   **Storm Water Pollution Control Best Management Practices.**

13.     In addition to implementing and maintaining the Advanced Treatment BMPs described in **Exhibit B** for drainage area SW-2 and updating the SWPPP accordingly, Estes shall implement the BMPs specifically identified and described in this Consent Decree in paragraph 15, for drainage areas SW-1, SW-3 and SW-4.

14.     Within ten (10) days of the Effective Date, Estes shall amend the La Mirada Terminal SWPPP as necessary to incorporate the following non-structural BMPs in drainage area SW-2:

14.1.     Sweeping

14.1.1. Monthly inspection of dock aprons and the removal of trash, broken pallet, and other debris by on-site personnel.

14.1.2. Quarterly detailed sweeping. Detail sweeping would include the use of a ride-on vacuum sweeper and/or large street sweeper, as well as hand sweeping of hard-to-reach areas. Movement of trailers, when necessary, to reach parking areas.

14.2.     Storm Water Team personnel will conduct Pre-Rain Inspections when the NOAA station at Fullerton Municipal Airport predicts a local rain in the

next seventy-two (72) hours of greater than one half (0.5) inches with a fifty percent (50%) probability.  The inspection will include the following elements:

14.2.1. Inspection of the site for any areas of dirt and debris accumulation.

14.2.2. Removal of dirt and debris from targeted areas.

14.2.3. Inspection of catch basin inserts and insert media. Replace as necessary, based upon observations and manufacturers recommendations.

14.2.4. Inspect for any spills or leaks and cleanup immediately as necessary.

14.2.5. Confirm all waste/trash/recycle bins are closed or covered.

15.     For drainage areas SW-1, SW-3, and SW-4, Estes will implement the following structural and non-structural BMPs:

15.1.     Sweeping

15.1.1. Monthly inspection of dock aprons and the removal of trash, broken pallets, or debris by on-site personnel.

15.1.2. Quarterly detailed sweeping. Detail sweeping would include the use of a ride-on vacuum sweeper and/or large street sweeper, as well as hand sweeping of hard-to-reach areas. Movement of trailers, when necessary, to reach parking areas.

15.2.     Inspections

15.2.1. Monthly inspections as set out in sections 5.4.1 and 5.4.3 of the current La Mirada Terminal SWPPP.

15.2.2. Annual inspections in a manner consistent with section 1.8 of the current La Mirada Terminal SWPPP.

15.2.3. Pre-rain inspections as described in paragraph 14.2 above.

15.2.4. Address emergency maintenance or fueling spill or leaks pursuant to sections 3.3 and 4.1.3 of the current La Mirada Terminal SWPPP.

15.3.     Staff training as described in paragraph 24 below.

15.4.     Structural BMPs Installing Flex Basin storm drain inserts and Enpurion with ZnIX pillows, or equivalent, in storm drain inlets in drainages SW-1, SW-3, and SW-4.  See attached manufacturer's cut sheets attached hereto as **Exhibit C.**

B.     **Discharge Locations and Storm Water Sampling.**

16.     Discharge Locations. The current site map in SMARTS identifies water sample locations for the La Mirada Terminal. Should storm water sample locations change, Estes will amend the Facility site map in SMARTS and notify Plaintiffs within thirty (30) days of such change.

17.     Sampling. Estes will implement the following industrial storm water monitoring procedures at the La Mirada Terminal:

17.1.     Frequency. During the life of this Consent Decree, Estes shall collect samples from Drainage Area SW-2 at the La Mirada Terminal from a minimum of four (4) "qualifying storm events" that occur in a reporting year such that Estes collects two (2) samples during the first half of the reporting year and two (2) samples during the second half of the reporting year. A "qualifying storm event" or "QSE" is a storm event that produces a discharge from a drainage area covered by the Storm Water Permit and is preceded by forty-eight (48) hours with no discharge from any drainage area. If, prior to March 1, Estes has collected samples from two (2) or fewer qualifying storm events, Estes shall, to the extent feasible, collect samples during as many QSE's as feasible until Estes samples a minimum of four storm events for the reporting year. No two (2) samples may be from the same storm event.

17.2.     Contained or Stored Storm Water. To the extent that the La Mirada Terminal stores or contains storm water in drainage area SW-2, Estes shall sample the stored or contained water at the La Mirada Terminal

before it discharges the storm water from the La Mirada Terminal even if not during operating hours.

17.3. <u>Parameters</u>. Estes shall analyze each storm water sample collected from a Sample Location for the contaminants set forth in the Table 1 Numeric Limits.

17.4. <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

17.5. <u>Detection Limits</u>. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Limits.

17.6. <u>Hold Time</u>. Estes shall deliver all samples collected from the La Mirada Terminal to the laboratory as necessary to ensure no exceedance of the sample "hold time" for each contaminant sampled. For field measurements, such as pH, Estes shall use portable instruments, and not pH paper.  Estes will calibrate and use the instruments according to manufacturers' instructions and approved industry methodology, as specified in, 40 C.F.R., Part 136.

17.7. <u>Results</u>. Estes shall request that the laboratory report sample analysis results to Estes within ten (10) days of laboratory receipt of the sample, or as soon as possible without incurring "rush" charges.

17.8. <u>Reporting</u>. Estes shall provide Plaintiffs with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples described and taken in accordance with the samples identified in paragraphs 15.1 and 15.2 collected at the La Mirada Terminal, within ten (10) business days of receiving the results.

18. <u>Contaminant Reduction</u>. Estes shall develop and implement additional BMPs to reduce pollutants in storm water discharges from the La Mirada Terminal,

where specifically required herein, to levels below those in Table 1 under the terms of this Consent Decree set forth below ("Numeric Limits").

**Table 1. Numeric Limits**

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | Permit NAL |
| Zinc* | 0.158 mg/L | Permit NEL |
| Iron | 1.0 mg/L | Permit NAL |
| Copper* | 0.027 mg/L | Permit NEL |
| Oil and Grease | 15 mg/L | Permit NAL |
| Aluminum | 0.75 mg/L | Permit NAL |
| pH | 6.5-8.5 s.u. | Basin Plan |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L | Permit NAL |

Analytes in Table 1 identified with an asterisk reference Total Maximum Daily Loads and corresponding Numeric Effluent Limitations for the applicable Receiving Waters (Coyote Creek and its tributaries) effective and enforceable on July 1, 2020.

19.    <u>Analyte Reduction Strategy for Table 1 Exceedances</u>. If the La Mirada Terminal monitoring, as required herein, reveals two exceedances during any reporting year of any single Numeric Limit specified in Table 1, or a single exceedance of any Instantaneous NAL value in the Storm Water Permit, Estes shall submit a plan to Plaintiffs for reducing the level of pollutant to Table 1 Limits ("Analyte Reduction Strategy" or "ARS") from drainage area SW-2.

19.1.    The ARS for the portions of the La Mirada Terminal subject to paragraphs 18, 19 and 20 herein shall be prepared by a Qualified Industrial Storm Water Professional ("QISP") and must be submitted to Plaintiff within thirty (30) days of Estes' receipt of sampling data showing two exceedances of Table 1 Limits as more fully described in Paragraph 19 above.[1] In the event of exceedances for multiple analytes, Estes may submit a single ARS addressing multiple

---

[1] The ARS discussed in this Consent Decree is a separate and distinct requirement from any "Action Plan" discussed in the Storm Water Permit, though actions taken to comply with the ARS may be used by Estes to demonstrate compliance with the Storm Water Permit.

1    analytes.

2    19.2.    Analyte Reduction Strategy Requirements. An ARS shall include at a
3            minimum: (1) the identification of the contaminant(s) discharged in
4            excess of the numeric value(s) in Table 1; (2) an assessment of the
5            likely source of each contaminant discharged in excess of the
6            numeric value(s); (3) the identification of additional BMPs, including
7            either preventing the exposure of pollutant and pollutant sources to
8            storm water and/or further treatment of storm water from drainage
9            SW-2 prior to discharge from the La Mirada Terminal that will
10           reduce pollutant concentrations to those below Table 1 Numeric
11           Limits; and (4) time schedules for implementation of the proposed
12           BMPs (if any). The time schedule(s) for implementation of additional
13           BMPs shall ensure that Estes implements all BMPs as soon as
14           reasonably practicable but no later than the ensuing October 1
15           following the preparation of the ARS for the preceding reporting year
16           unless the Settling Parties mutually agree on a later date.

17   19.3.    ARS Review. Plaintiffs shall have thirty (30) calendar days upon
18           receipt of Estes' ARS to provide Estes with comments on the ARS
19           prepared by a QISP. Within twenty-one (21) calendar days of Estes
20           receipt of Plaintiffs' comments on the ARS, Estes shall consider
21           Plaintiffs' comments and shall either incorporate them into the ARS
22           or, if Estes declines to accept one or more of Plaintiffs' comments,
23           provide Plaintiffs with a written explanation prepared by a QISP of
24           the grounds for rejection.

25   19.4.    Disputes regarding the adequacy of a BMP shall not impact the
26           otherwise applicable schedule for implementing any other BMP set
27           forth in the ARS. The Parties shall resolve any disputes as to the
28           adequacy of the ARS pursuant to the dispute resolution provisions of

1    this Consent Decree as set out in Section VI below.

2        19.5.    Estes shall not be required to post ARS to SMARTS.

3    20.    Estes shall revise its SWPPP and/or Monitoring Implementation Plan

4    ("MIP"), as applicable, within thirty (30) days of receipt of Plaintiff's ARS comments to

5    reflect the changes and/or additional BMPs set forth in the ARS or in the alternative,

6    notify Plaintiff of a dispute to be resolved through the dispute resolution provisions set

7    forth in Section VI. Estes shall notify Plaintiffs in writing when it has implemented the

8    final ARS and made any necessary revisions to the SWPPP and/or MIP uploaded to

9    SMARTS.

10    21.    After the Effective Date, during the 60-day implementation period of the

11    Advanced Treatment BMPs as more fully described in **Exhibit B**, Plaintiffs waive the

12    requirement for any ARS submission related to discharges from drainage area SW-2 even

13    if otherwise triggered pursuant to paragraph 18 above.

14    **C.    <u>Visual Observations.</u>**

15    22.    Estes shall conduct all visual observations in accordance with the terms of

16    this Consent Decree. Visual observations include the following:

17        22.1.    <u>Storm Water Discharge Observations</u>. Estes shall conduct visual

18            observations at each point where the La Mirada Terminal discharges

19            storm water in drainage area SW-2 during each QSE.

20        22.2.    <u>Non-Storm Water Discharge Observations</u>. During the life of this

21            Consent Decree, Estes shall conduct monthly non-storm water visual

22            observations at each discharge point in drainage area SW-2.

23    23.    Estes shall maintain logs of the visual observations consistent with this

24    Consent Decree and Estes shall make all visual observation logs available for review

25    during the life of this Consent Decree in conformance with the Storm Water Permit and

26    shall make these records available for Plaintiff's review via email within five (5) business

27    days of the request.

28

**D.** **Employee Training.**

24. Within forty-five (45) days of the Effective Date, Estes shall conduct additional employee training to familiarize Terminal Manager, the members of the Storm Water Team designated in the SWPPP, and Maintenance Shop Personnel at the Estes Facility with the requirements of the Storm Water Permit and this Consent Decree. The training program shall include use of written training materials needed for effective implementation of the training program. Estes shall also ensure that there are enough trained employees assigned to implement the BMPs and conduct other compliance activities required by the La Mirada SWPPP and this Consent Decree.

25. The training program shall require at least the following:

25.1. Non-Storm Water Discharge Training. Estes shall train employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which can result from improper practices that may produce non-storm water discharges at the La Mirada Terminal, and how to detect and prevent them.

25.2. BMP Training. Estes shall train employees on BMP implementation and maintenance to ensure effective BMP implementation to prevent or minimize the exposure of industrial pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of storm water, where required herein, at the La Mirada Terminal.

25.3. Sampling Training. Estes shall designate an adequate number of employees or consultants to ensure the collection of storm water samples required by this Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure that individuals engaged in sampling activities properly collect, store, and submit the

samples to a certified laboratory properly.

25.4. <u>Visual Observation Training</u>. Estes shall provide training to all individuals performing visual observations at the La Mirada Terminal pursuant to this Consent Decree and/or the La Mirada SWPPP that includes required visual observations, the distinct types of visual observations required, and instruction on proper record keeping.

26.     Estes shall provide training on an annual basis, or as otherwise required, to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of Estes who is a registered QISP familiar with the requirements of this Consent Decree and the Storm Water Permit. Estes shall repeat the training as necessary to ensure that employees are familiar with the requirements of this Consent Decree and the La Mirada Terminal SWPPP and/or MIP, as appropriate to the employee's job descriptions. Any new employee who is responsible for implementation of any portion of the SWPPP, the MIP, or compliance with other terms of the Storm Water Permit or Consent Decree shall receive training within ten (10) business days after employment, or before being responsible for compliance with the terms of the Storm Water Permit or Consent Decree.

27.     Estes shall maintain training records to document compliance with Section II.E of this Consent Decree and shall make these records available for Plaintiffs' review via email within ten (10) business days of the request. Estes will confirm that the Training Program specified in the La Mirada Terminal SWPPP, is consistent with the training program required by this Consent Decree.

**E.    <u>Storm Water Pollution Prevention Plan and Monitoring Implementation Plan</u>.**

28.     Within sixty (60) days of the Effective Date of this Consent Decree, Estes shall revise the Estes Facility's SWPPP and/or MIP to include:

28.1.   All BMPs utilized at the La Mirada Terminal for drainage area SW-2.

28.2.   All BMPs identified and developed pursuant to this Consent Decree

1    and/or the Storm Water Permit for drainage area SW-2.

2    28.3.   The specific individual(s) or positions responsible for compliance

3            with the Storm Water Permit and this Consent Decree.

4    28.4.   A detailed site map that includes at a minimum all information

5            required by the Storm Water Permit and this Consent Decree.

6    28.5.   A description of each industrial activity, all potential pollutant

7            sources, and each potential pollutant associated with each industrial

8            activity and/or pollutant source.

9    28.6.   Incorporation of the requirements of the Storm Water Permit and this

10           Consent Decree as applicable.

11   29.   Additional and Ongoing Revisions to SWPPP and/or MIP. Estes shall revise

12   the SWPPP and/or MIP if there are any changes in the Estes Facility's regulated

13   operations that may possibly affect the quality of storm water discharges, including but

14   not limited to, changes to storm water discharge point(s)/sample location(s), changes or

15   additions to the BMPs at the Estes Facility resulting from an ARS.

16   30.   Commenting on Revised SWPPP and/or MIP. Estes shall notify Plaintiffs of

17   any revised SWPPP and/or MIP within five (5) days of submittal to SMARTS.

18   30.1.   For any SWPPP or MIP revisions that are not the result of an ARS,

19           Plaintiffs shall provide comments prepared by a QISP, if any, to Estes within

20           thirty (30) days of notification of any revisions to the SWPPP or MIP.

21           Within thirty (30) days of receiving comments from Plaintiffs, Estes shall

22           incorporate Plaintiffs' comments into any revised SWPPP and/or MIP or

23           shall justify in writing prepared by a QISP why Estes declined to incorporate

24           the comment. The Parties shall resolve any disputes as to the adequacy of the

25           SWPPP and/or MIP pursuant to the dispute resolution provisions of this

26           Consent Decree, set out in Section VI below.

27   **F.**   **Alternative Means of Compliance**

28   31.   Notice of Termination/Notice of Non-Applicability. The Settling Parties

agree that if the La Mirada Terminal satisfies the requirements of and receives an approval for a "Notice of Termination/Notice of Non-Applicability" as those terms are defined in the Storm Water Permit, and all monetary obligations in this Consent Decree have been met, Estes shall be considered to be in full compliance with the terms of this Consent Decree and the provisions of Section III of this Consent Decree shall not apply so long as the Notice of Termination/Notice of Non-Applicability remains in effect.

## IV.    COMPLIANCE MONITORING AND REPORTING

32.    Estes shall allow Plaintiffs one site inspection in the first calendar year following the Effective Date and one site inspection following completion of the Advanced Treatment BMP. In the event that the La Mirada Terminal is required to prepare and file a Level 1 or Level 2 ERA Report as defined in the Permit or an ARS as defined in this Consent Decree, Plaintiffs shall be permitted to conduct a site inspection within ninety (90) days of each time there is an upload of an ERA Report to SMARTS or the submission of an ARS to Plaintiffs in order to inspect the newly implemented BMPs under the terms of the ERA Report(s) or ARS, and to ensure compliance with the Industrial General Permit as implemented at the Estes Facility. Estes shall allow only one site inspection during each calendar year of this Consent Decree.

33.    Any Site Inspection shall occur during normal business hours, and Plaintiffs will provide Defendant with as much notice as possible—but at least twenty-four (24) hours' notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours' notice during dry weather. For any Site Inspection requested to occur in wet weather, Plaintiffs shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by telephone and electronic mail to the individual(s) designated below at paragraph 51. All visitors to the site shall execute and agree to the terms of **Exhibit D** attached to this Agreement prior to entering the Facility.

34.    During a site inspection, Estes shall allow Plaintiffs and/or their

representatives access to the Estes Facility's SWPPP, MIP, and other monitoring records, reports, and all sampling data for the La Mirada Terminal that is not otherwise privileged. In addition, during the site inspection, Plaintiffs and/or their representatives may collect samples of discharges, even if outside of the first four hours of discharge, from the La Mirada Terminal. Plaintiffs shall submit any collected samples to a certified California laboratory for analysis. A trained operator shall take any onsite measurements such as pH with properly calibrated instruments. Estes shall have an opportunity to take concurrent measurements using its own equipment and request split samples. Plaintiffs shall provide Estes with the complete laboratory reports within five (5) business days of receipt.

35.    Reporting and Documents. During the life of this Consent Decree, Estes shall copy Plaintiffs on all documents related to storm water quality at the Estes La Mirada Terminal that Estes submits to the Regional Board, the State Board, and/or any State or local agency or municipality, which are not uploaded to SMARTS.

36.    Compliance Monitoring and Oversight. Estes shall pay a total of Four Thousand Dollars ($4,000), in the first year of the term of this Consent Decree, and Two Thousand Dollars ($2,000) annually over the remaining two (2) years of the term of this Consent Decree to compensate Plaintiffs for costs and fees to be incurred for monitoring the La Mirada Facility's compliance with this Consent Decree. Estes shall make payments within five (5) business days of the Effective Date, and thereafter on each anniversary of the Effective Date during the term payable to "Los Angeles Waterkeeper" and addressed to Los Angeles Waterkeeper, 360 E 2nd Street Suite 250 Los Angeles, CA 90012.

**V.    Environmental Project and Reimbursement of Litigation Fees and Costs**

37.    Environmental Project. To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in watersheds tributary to the Southern California Bight, Estes agrees to make a payment totaling Twenty Two Thousand Five Hundred Dollars ($22,500) to the Rose Foundation made within sixty (60) days of the Effective date, payable to the Rose

Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. Estes shall make the payment within ten (10) business days of the Effective Date.

38.     For all missed deadlines included in this Consent Decree, Estes shall make a stipulated payment of Five Hundred Dollars ($500) for each missed deadline included in this Consent Decree, not excused by Force Majeure, provided, however, that Plaintiffs shall provide Estes with notice of any alleged missed deadline and Estes shall have ten (10) business days to cure the missed deadline. Payments for a missed deadline shall fund environmental project activities. Estes shall make the Stipulated Payment to the Rose Foundation, payable to the Rose Foundation for Communities and the Environment and sent to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. Estes shall provide Plaintiffs with a copy of such payment concurrently with the payment.  Estes shall make the Stipulated Payment within thirty (30) days of a missed deadline unless Plaintiffs agree in writing to an extension of that deadline. Estes shall provide Plaintiffs with a copy of such payment concurrently with the payment.

39.     <u>Reimbursement of Plaintiff's Fees and Costs</u>. Estes shall pay a total of Forty Seven Thousand Dollars ($47,000) to Plaintiffs to reimburse Plaintiffs for their investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred because of investigating and preparing the lawsuit and negotiating this Consent Decree. Estes shall make the payments within ten (10) business days of the Effective Date and payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes via U.S. Mail or commonly accepted carrier to 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

40.     ARS Plan Payments. Estes shall pay One Thousand Dollars ($1,000) each time Estes submits an Analyte Reduction Strategy plan to Plaintiffs. Estes shall submit the payment simultaneously with the submittal of the ARS plan. Estes shall make the payment payable to "Los Angeles Waterkeeper" and addressed to Los Angeles Waterkeeper, 360 E 2nd Street Suite 250, Los Angeles, CA  90012. Failure to submit a

payment as required under this paragraph will constitute a breach of the Consent Decree.

## VI. <u>DISPUTE RESOLUTION</u>

41.     This Court shall retain jurisdiction over this matter until the final termination date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree, unless there is an ongoing dispute at the time of the final termination date, in which case this Consent Judgment will terminate upon final resolution of the dispute. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

42.     If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the Parties are unable to resolve the dispute through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge assigned to this action. The Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference pursuant to this Paragraph.  If the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court. In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable CWA and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Court.  The Court shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof.

43.  <u>Force Majeure.</u> No Settling Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes, but is not limited to, any act of god, pandemic/epidemic, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability to obtain the necessary authorizations, approvals, or permits from, any governmental agency or private party; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance. Delay in compliance with a specific obligation under this Consent Decree due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

a.  If Estes claims compliance was or is impossible, it shall notify Plaintiffs in writing as soon as possible, but in no event more than five (5) business days of the date that Estes learns of the event or circumstance that caused or would cause a violation of this Consent Decree (hereinafter referred to as the "Notice of Nonperformance").

b.  Within ten (10) business days of sending the Notice of Nonperformance, Estes shall send Plaintiff a detailed description of the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures Estes took or will take to prevent or minimize

the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. In no event shall the deadline be extended beyond the length of the delay caused by the Force Majeure event. Estes shall adopt all reasonable measures to avoid and minimize such delays and shall provide Plaintiffs with notice of a reasonable date certain of completion of the prior nonperformance of a specific obligation under the terms of this Consent Decree within fifteen (15) days of discovery of the date certain for completion.

c.    The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to an event or matter covered under the Force Majeure provisions of this Consent Decree, despite the timely good faith efforts of Estes, the establishment of new deadlines.

d.    If Plaintiff disagrees with Estes's Notice of Nonperformance, or if the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Section VI.

44.    <u>Administrative Delay</u>. Estes shall diligently pursue any approvals required for compliance with this Consent Decree. Should such diligent pursuit of approvals required for compliance be unavailing due to actions of or inaction on the part of the any governmental or regulatory entity with jurisdiction over Estes, and Estes reasonably demonstrates that these delays are not attributable to any action or inaction on the part of the Estes, any relevant compliance deadlines set forth in this Consent Decree shall be tolled until such time as Parties agree to an alternative means of compliance with the Consent Decree pursuant to the Force Majeure clause herein.

## VII.    **MUTUAL RELEASE OF LIABILITY**

45.    <u>Plaintiffs' Release</u>. Upon the Effective Date of this Consent Decree, Plaintiffs, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, attorneys, and other representatives releases all persons including, without limitation,

Estes (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waives all claims alleged in the Notice Letter and/or Complaint up to the termination of this Consent Decree.

46.     <u>Estes's Release</u>. Upon the Effective Date of this Consent Decree, Estes, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Plaintiffs (and their current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and their agents, attorneys, and other representatives) from and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and Complaint up to the termination of this Consent Decree by the Court.

## VIII.   <u>MISCELLANEOUS PROVISIONS</u>

47.     <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Estes maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

48.     <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

49.     <u>Choice of Law</u>. The laws of the United States and the State of California shall govern this Consent Decree.

50.     <u>Severability</u>. If the Court holds any provision, paragraph, section, or sentence of this Consent Decree to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51.     <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiffs:</u>

California Coastkeeper Alliance
Attn: Drevet Hunt
1100 11th Street, 3rd Floor
Sacramento, California 95814
dhunt@cacoastkeeper.org

Los Angeles Waterkeeper
Attn: Benjamin Harris, Barak Kamelgard
360 E 2nd Street Suite 250
Los Angeles, CA  90012
ben@lawaterkeeper.org
barak@lawaterkeeper.org

<u>With a copy to</u>

Anthony M. Barnes
AQUA TERRA AERIS LAW GROUP LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
amb@atalawgroup.com

<u>If to Estes:</u>

Estes Express Lines, Inc.
Attn: Curtis Carr
3901 West Broad Street.
Richmond, VA 23230

<u>With a copy to:</u>

Rutan and Tucker LLP
Attn: Jeremy N. Jungreis
18575 Jamboree Road, 9th Floor
Irvine, CA 92126

And

Environmental Law Group LLP
Attn: S. Wayne Rosenbaum
225 Broadway, Suite 1900
San Diego, CA 92101

52.     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

53.     Counterparts. The Parties may execute this Consent Decree in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

54.     Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

55.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

56.     Integration Clause. This is an integrated Consent Decree. The Parties intent this Consent Decree to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

57.     Authority. The undersigned representatives for Plaintiff and Estes each certify that he/she is authorized by the party whom he/she represents to enter the terms

1    and conditions of this Consent Decree.

2        58.    The Settling Parties certify that their undersigned representatives are fully

3    authorized to enter this Consent Decree, to execute it on behalf of the Settling Parties,

4    and to legally bind the Settling Parties to its terms.

5        59.    The Settling Parties, including any successors or assigns, agree to be

6    bound by this Consent Decree and not to contest its validity in any subsequent

7    proceeding to implement or enforce its terms.

8        **IN WITNESS WHEREOF**, the undersigned have executed this Consent

9    Decree as of the date first set forth below.

10   APPROVED AS TO CONTENT

11

12   Dated:        December 14, 2022            By: _____

13                                             Sean Bothwell
                                               Executive Director
14                                             California Coastkeeper Alliance

15
     Dated:        December 14, 2022
16                                             By: _____

17                                             Bruce Reznik
                                               Executive Director
18                                             Los Angeles Waterkeeper

19
     Dated:        12/15/2022                  By: _____
20                                             Curtis Carr
21                                             Estes Express Lines, Inc.

22

23   APPROVED AS TO FORM

24
                    December 14, 2022
25   Dated:        _____    By: _____

26                                             Anthony M. Barnes
                                               Aqua Terra Aeris Law Group
27                                             Attorney for Plaintiffs

28

---

Consent Decree                    27            Civil Case No. 2:22-cv-07542-FLA-PVC

Dated:      December 16, 2022                By: _____
                                             Jeremy N. Jungreis
                                             Rutan and Tucker LLP
                                             Attorney for Estes Express Lines, Inc.

**IT IS SO ORDERED.**


Date:  February 27, 2023            _____
                                   FERNANDO L. AENLLE-ROCHA
                                   United States District Judge

# EXHIBIT A



## LEGEND

| | |
|---|---|
| ——— | : Property Boundary |
| – – – | : Drainage Area Boundary |
| ——— | : Industrial Activity Area |
| – – – | : Underground Conveyance |
| ▢ | : Drain Inlets/Catch Basins |
| ■ SW-2 | : Sample Location and Designation (Stormwater Rx) |
| ← | : Surface Flow Direction |
| ▨ | : Covered Canopy Areas |
| ▨ | : Municipal Drain Inlets |
| ○ | : Downspouts |
| ■ | : Discharge Point |
| ■ | : Capped Drain Inlet |
| ▭ | : Stormwater Rx Treatment System and Piping |
| ▨ | : Fueling Area |

N

APPROXIMATE SCALE IN FEET
0    125    250


An Employee-Owned Company

(800) 511-9300          www.advancedgeo.biz

**EXHIBIT A: SITE PLAN**
ESTES EXPRESS WEST -
LA MIRADA TERMINAL
14727 ALONDRA BOULEVARD
LA MIRADA, CALIFORNIA

DATE:  OCTOBER 2022
FILE:  SPD
DRAWN BY: JKS
PROJECT NO.   17-4030
FIGURE:   1

# EXHIBIT B



## AdvancedGeo
### An Employee-Owned Company

## Photographic Log

| Client Name: | Site Location: | Date: |
|---|---|---|
| ESTES EXPRESS | 14727 Alondra Boulevard<br>La Mirada, California | October 2022 |

| Photo No. 1 | |
|---|---|
| **Description:**<br>Aquip System Installed on south side of Subject Property. |  |

| Photo No. 2 | |
|---|---|
| **Description:**<br>Discharge piping for Aquip System. |  |

October 2022
Page 2 of 2



## Photographic Log

| Client Name: | Site Location: | Date: |
|---|---|---|
| ESTES EXPRESS | 14727 Alondra Boulevard<br>La Mirada, California | October 2022 |

| Photo No. 3 | |
|---|---|
| **Description:**<br>View of treatment media emplaced inside the Aquip System. |  |

## GENERAL NOTES

1. AQUIP® FILTRATION SYSTEM BY STORMWATERX LLC - PORTLAND, OREGON -  800.680.3543 (U.S. PATENT NO. 8,002,974).
2. PRETREATMENT AND FILTER MEDIA COMBINATION DEPENDENT ON POLLUTANT REMOVAL REQUIREMENTS.  MODELS: SBE: OMNIPLEX & INERT/SORPTIVE MEDIA, SXI:SETTLING PRETREATMENT & INERT MEDIA.
3. INTERNAL APPURTENANCES BY STORMWATERX INCLUDING INLET AND OUTLET SAMPLE PORTS, INLET FLOW CONTROL & CHECK VALVES, INLET DISTRIBUTOR, UNDERDRAIN SYSTEM, EMERGENCY OVERFLOW AND ADJUSTABLE HEAD CONTROL.
4. SYSTEM REQUIRES LEVEL SURFACE FOR 31' x 8' FOOTPRINT AND LOAD BEARING CAPACITY OF 120,100 LBS.
5. INLET AND OUTLET PIPING CONNECTION SIZE AS NOTED. CONNECTION PIPING PROVIDED BY OTHERS. CENTER INLET STANDARD, INLET CONNECTION LEFT OR RIGHT (RIGHT SHOWN).   OPTIONAL LEFT OR RIGHT OUTLET (LEFT OUTLET SHOWN).
6. PERMANENT POOL DEPTH IS 4'-2" ABOVE THE BOTTOM OF STRUCTURE. THE OPERATING WATER SURFACE HEIGHT IS 6' ABOVE BOTTOM OF STRUCTURE.



**TOP VIEW** 1/1



**SECTION VIEW** A/1





800.680.3543 | stormwaterx.com

| | AQUIP MODEL 210S STORMWATER FILTRATION SYSTEM STANDARD DETAIL | | | SHEET 1 |
|---|---|---|---|---|
| DATE: 1/21/2020 | SCALE: NONE | FILE NAME: SRX-AQUIP-210S-DTL | DRAWN: TL | CHECKED: RC |
| | | | | 1 OF 1 |



# Stormwater
# Filtration System

## Technical Brief







stormwaterx.com



# Fundamentals

▶ *Aquip® (uh-kwip) is a patented, multi-media filtration system for stormwater applications.*

This robust stormwater treatment Best Management Practice (BMP) produces good stand-alone stormwater quality for a wide range of industries, is easy to retrofit to existing stormwater collection and conveyance infrastructure, and requires no operator attention during rain events.[1]

Aquip uses passive adsorptive filtration technology designed specifically for reduction of stormwater pollutants such as suspended solids, turbidity, heavy metals, nutrients and organics from runoff. The system uses no chemicals and has no moving parts, making operation simple and safe. Aquip's pre-treatment chamber in sequence with inert and adsorptive filtration media effectively trap pollutants in a media package that is flexible and reliable. Compliance samples are collected from a sample port at the outlet of the filter. Aquip has received a coveted third-party regulatory approval[2] for removal of particulates, dissolved metals and phosphorus from stormwater.

Below are photographs of samples taken before and after running through the Aquip filtration system. Aquip is an effective filter, producing good quality effluent under a range of influent stormwater quality conditions.



Influent: 25 mg/L (TSS)

Effluent: <10 mg/L (TSS)



Influent: 140 mg/L (TSS)

Effluent: 2 mg/L (TSS)

*Actual full-scale Aquip influent and effluent samples*



*Installation of an Aquip 50 system*



*Aerial view of an Aquip 400 system*



1  When properly maintained.
2  The Washington Department of Ecology has conditionally approved (CULD) the Aquip enhanced stormwater filtration system for use for basic, enhanced and phosphorus treatment. The CULD was granted as a part of the Technology Assessment Protocol Ecology (TAPE) process upon review by a Board of External Reviewers consisting of stormwater experts from across the United States. According to Ecology, "...several other states, counties, and cities use TAPE certification to determine whether a technology can be installed within their jurisdiction, including Sacramento CA, Denver CO, St. Louis MO, the State of New Hampshire, Portland OR, the Oregon Department of Transportation, and the State of Rhode Island. Aquip is arguably the first and only industrial stormwater treatment BMP approved for the treatment of solids, metals, and nutrients." The CULD approval means that Aquip can be specified and is approved for use on new and redevelopment projects in Washington as well as retrofits without additional review.



# Reclaiming the World's Water.®



# Performance

**Aquip** *performance has been demonstrated at a wide range of industrial sites...*

...including scrap and recycling, galvanizing, metal fabrication, wood treating, automobile salvage, transportation equipment, food processing, power generation, marine and a host of others. Representative performance data from Aquip are presented in the figure below. As the data show, Aquip produces good quality stormwater effluent for the regulated stormwater pollutants as well as for many pollutants that are not currently regulated, but may be in the future.



**Median values reported for each sample set:**

"Box" Range = 25th - 75th percentile

"Whisker" Range = 5th - 95th percentile

before treatment

after treatment

Data set includes some non detected (ND) values reported at ½ the detection limit for purposes of statistical ranges.







*Particle size cutoff for Aquip filtration system is approximately 3 microns. Third-party sampling and analysis of influent and effluent stormwater from an Aquip 160SBE filtration system at design flow rates showed influent particle size ranging from 0-200 microns (mean particle size 42 microns) and effluent particle size ranging from 0-2.8 microns (mean particle size 1 micron). The results verified that Aquip filtration system removes a range of particle sizes from sand and silt to medium/fine clays.





# Operation



Pretreatment chamber

Filtration chamber

**2**

**3**

**6**

**1**

Inlet

**4**

**5**

Forklift pockets allow easy installation.

US Pat. 8,002,974 / CON Pat. 2,640,800

Outlet

**7**

**8**

Sample port

**1 Inlet:** Polluted stormwater flows into Aquip via the inlet pipe, then into the pretreatment chamber. In most cases stormwater is pumped to Aquip using a simple float-actuated stormwater pump. To assist with predictive maintenance, a totalizing flow meter on the system lets owners track the rate and volume of stormwater treated.

**2 Pretreatment Chamber:** This chamber is customized to naturally balance the water chemistry and improve the removal efficiency of the treatment. The pretreatment process works synchronously with Aquip's filtration media to settle solids, remove free oil, and to create metal complexes that are more easily removed in the filtration chamber. A pretreatment pump may be included on certain models to encourage aerobic conditions and to draw down the standing water level between storm events. A mosquito barrier is provided for systems without a pretreatment pump.

**3 Inlet Distributor:** Water from the pretreatment chamber flows by gravity into the inlet distributor and is dispersed along the full length of the filter media bed, optimizing the contact area of stormwater with filtration media. Energy dissipation fabric lies beneath the distributor to prevent scouring of the media bed.

**4 Filtration Chamber:** Layers of inert and adsorptive media remove stormwater pollutants such as metals, particulates, oil, organics and nutrients. Within the filtration chamber, pollutant removal occurs through

a combination of straining, filtration, complexing, adsorption, absorption, micro-sedimentation, and biological degradation, producing excellent stormwater quality. Once passed through the media bed, clean stormwater flows into the high efficiency underdrain and out of the system, leaving the targeted pollutants permanently trapped in the filter bed. The filter bed drains down between storm events. Integrated ladders, filter maintenance tools and an external filter bed drain-down make routine maintenance without special equipment simple.

**5 Adjustable Head Control:** Clean stormwater leaving the system passes through the adjustable head control. This device can be adjusted in the field and assures optimal water/filter media contact under a range of operating conditions.

**6 Emergency Overflow:** In the event that the filter bed becomes plugged during a rain event, the emergency overflow allows the stormwater to bypass. Filter bed plugging is avoided by maintaining the system per StormwateRx recommendations.

**7 Outlet:** Clean stormwater discharges from the Aquip unit by gravity through the outlet.

**8 Outlet Sample Port:** This port provides safe and easy access to system effluent for stormwater compliance sampling.

Reclaiming the World's Water.®





# Product Configurations

▶ *Aquip is available in a number of modular configurations.*

Whether the structure is steel, plastic, concrete, fiberglass, earthen, or owner-supplied, Aquip owners can expect the same high level of performance and reliability StormwateRx products are known for. Available upgrades for Aquip include freeze protection, covers and seismic tie-downs.

## Retrofit

Our most popular Aquip configuration, Aquip in a steel or recyclable plastic configuration for above-ground applications, can be moved into place quickly and can be operational in as little as one day.

- Easy to install with a forklift
- Open top for easy access and simple inspection
- Built-in ladders allow simple maintenance
- Nine sizes available for flow rates up to 600 gpm



## New Construction

Suitable for buried or full gravity applications, this Aquip configuration is designed as a pre-cast concrete vault or panel-vault. The below-ground configuration can be supplied with a solid lid for traffic-rated applications or with an open top for easy inspection and maintenance.

- Ideal for large sites subject to freezing weather or where space is at a premium
- Often used for new or redeveloped industrial sites
- Flexible layout to accommodate varying site orientations
- Flow rate virtually unlimited



## Portable

Aquip 10P and 25S are small-scale, passive water treatment technologies ideal for enhanced filtration of stormwater runoff from small sites, or for use in washwater pre-treatment applications. The 10P (available in plastic) and the 25S (made of steel) are both easily moved with a forklift and come ready to install and operate: simply connect to your pump and outlet.





1.800.680.3543 | stormwaterx.com





# Sizing

| Aquip Model | Treatment Rate (gpm)* | | Sizing Guideline (acres)* | Footprint (ft x ft) |
| --- | --- | --- | --- | --- |
| | Standard | Range | | |
| 10 | 10 | 5 – 15 | < 0.25 | 3' x 9' |
| 25 | 25 | 12 – 40 | 0.25 – 0.5 | 5' x 9' |
| 50 | 50 | 25 – 75 | 0.5 – 1 | 7' x 12' |
| 80 | 80 | 40 – 120 | 1 – 2 | 7' x 16' |
| 110 | 110 | 60 – 170 | 2 – 3 | 8' x 18' |
| 160 | 160 | 80 – 240 | 3 – 4 | 8' x 27' |
| 210 | 210 | 100 – 320 | 4 – 5 | 8' x 32' |
| 300 | 300 | 150 – 450 | 5 – 8 | 13' x 36' |
| 400 | 400 | 200 – 600 | 6 – 10 | 13' x 47' |

*Varies by region*



TOP VIEW



SIDE VIEW








Reclaiming the World's Water.®



# Site Configurations

## Aquip Downstream of Clara®



EMERGENCY OVERFLOW
AQUIP OUTLET
MANHOLE ACCESS POINT
CONNECT TO AVAILABLE POWER SOURCE
AQUIP INLET PIPE
AQUIP PUMPED FLOW INLET PIPE
EXISTING STORM DRAIN PIPE
AQUIP GRAVITY OUTLET PIPE
EXISTING OUTFALL PIPE
CLARA STORMWATER SEPARATOR
TREATMENT PUMP AND FLOATS

## Aquip Downstream of Bypass Pump Vault



EMERGENCY OVERFLOW
AQUIP OUTLET
CONNECT TO AVAILABLE POWER SOURCE
AQUIP INLET PIPE
EXISTING PIPE
PLUMB TO EXISTING OUTLET
AQUIP PUMPED FLOW INLET PIPE
EXISTING OUTFALL
EXISTING OUTFALL PIPE
BYPASS PUMP VAULT
UPTURNED ELBOW
NEW TREATMENT PUMP AND FLOATS

## Aquip Downstream of Detention



CONNECT TO AVAILABLE POWER SOURCE
DETENTION TANK
EMERGENCY OVERFLOW
DETENTION INLET
AQUIP INLET PIPE
AQUIP OUTLET
TREATMENT PUMP
TO DISCHARGE POINT



1.800.680.3543 | stormwaterx.com



# Testimonials

   

   

   

   

*"StormwateRx represents best-of-class solutions that provide a ROI every manger will appreciate. Given the choice to proactively make a capital investment versus being subject to third party lawsuits, I will always choose to invest in the future of our business. This is why we partnered with StormwateRx."*
— Edward Kangeter IV, CEO, CASS, Inc., Oakland, California, USA

*"Canal Boatyard is known as one of the cleanest facilities on the waterfront. We are proud to be at the forefront of the effort to keep runoff pollution to a minimum. The 2009 installation of the StormwateRx system filters runoff water from the entire yard; ensuring contaminants don't make it into the waterway."*
— Ivaylo Minkov , Manager, Canal Boatyard, Seattle, Washington, USA

*"Locally-available treatment systems seemed to offer a short-term solution, but we wanted to future-proof our site for generations to come, and we found the ability to do so with the systems we invested in from StormwateRx."*
— Trevor Munro, Managing Director, Metalcorp NZ Ltd., Christchurch, New Zealand

*"We are always looking for ways to improve the efficiency and sustainability of our operations, and making sure we have the best stormwater treatment equipment is part of that commitment. The StormwateRx treatment train has put Davis Industries at the forefront of environmental technology for the scrap metal recycling industry and we are proud to own one of the most environmentally protective systems on the East Coast."*
— Bill Bukevicz, Executive Vice President, Davis Industries, Lorton, Virginia, USA



**stormwateRx**
a newterra company

1.800.680.3543 | 503.233.4660
stormwaterx.com

StormwateRx and the Newterra logo are trademarks or registered trademarks of Newterra Group, Ltd. or. its affiliates in the U.S. and other countries. Copyright © 2019 StormwateRx LLC and Newterra Group, Ltd.
All rights reserved. Specifications are subject to change without notice.    09-2019 v019



# Technical Datasheet

## Aquip® Media Filter
### enhanced passive media filtration

**Aquip (uh-KWIP)** is a patented[†], passive media filtration technology for enhanced stormwater treatment. Sized to fit the hydrology of the site, Aquip is typically installed above ground and fed by a simple pump station.

| Target Pollutants | |
|---|---|
| Suspended solids | Metals |
| Turbidity | Phosphorus |

Aquip's simple, easy-to-operate system uses media that can be formulated to remove a wide range of pollutants: suspended solids, turbidity, heavy metals (including dissolved metals), organics (e.g. hydrocarbons); and nutrients like nitrogen and phosphorus. Targeted metals include copper, lead, zinc, iron, aluminum, nickel, cadmium and others.

### Aquip® Advantages

■ Removes suspended solids, turbidity, dissolved pollutants (including heavy metals), organics and phosphorus

■ Targeted metals include copper, zinc, iron, lead, aluminum, nickel and others

■ Patented filtration —no chemicals or backwash

■ Passive gravity flow-through system —no moving parts

■ Open top for easy access and maintenance

■ Operates unattended

■ Simple and safe effluent sampling

■ TAPE GULD approved



Pretreatment chamber    Distribution header    Filtration chamber

Inlet (not shown)    Emergency overflow indicator    Emergency overflow bypass

Outlet

Forklift pockets allow for unit mobility when system is empty.

Outlet sample port    Adjustable head control

[†]US Pat. 8,002,974, Canada Pat. 2,640,800

| Model | Treatment Rate (gpm) | Footprint (ft x ft) |
|---|---|---|
| 10S/P | 5 - 15 | 3 x 9 |
| 25S | 12 - 40 | 5 x 9 |
| 50S | 25 - 75 | 7 x 12 |
| 80S | 40 - 120 | 7 x 16 |
| 110S | 60 - 170 | 8 x 18 |
| 160S | 80 - 240 | 8 x 27 |
| 210S | 100 - 320 | 8 x 32 |
| 300S | 150 - 450 | 13 x 36 |
| 400S | 200 - 600 | 13 x 47 |

\* Recommended model size depends upon application. Please contact StormwateRx for more information.

### Options
■ Available structures include steel, concrete, and plastic
■ Freeze protection, cover and other options available

StormwateRx LLC designs, manufactures, installs and maintains stormwater treatment systems for industrial customers. Contact StormwateRx to find out how we can help you meet your stormwater quality requirements.

1.800.680.3543
stormwaterx.com





# Aquip® Enhanced Media Filter



*Aquip 110S with optional freeze protection and rolltop cover*



*Aquip 250C underground (full gravity flow)*



*Aquip 400SBE*



Influent: 25mg/L (TSS)    Effluent: <10mg/L (TSS)



Influent: 347mg/L (TSS)    Effluent: <10mg/L (TSS)





## stormwateRx
### a newterra company

1.800.680.3543
stormwaterx.com

StormwateRx and the Newterra logo are trademarks or registered trademarks of Newterra Group, Ltd. or its affiliates in the U.S. and other countries. Copyright © 2022 StormwateRx LLC and Newterra Group, Ltd. All rights reserved. Specifications are subject to change without notice. 03-2021 v027.

**EXHIBIT C**

# Enpurion FlexBasin™


**NEW!**

## Stormwater pillows offer low-cost, versatile and effective treatment

**Combine engineered media pillow materials to fit your site's needs**

### Proven Results

- Select engineered media for specific pollutants
- Pick textiles for influent characteristics
- Reduce heavy metals
- Capture turbidity and suspended solids
- Eliminate emulsified oils and hydrocarbons
- Change pillows to adapt to site conditions instantly
- Manage your own maintenance quickly, easily and cost-effectively

### Advantages

- Flexible and effective stormwater treatment
- Low-cost, easy to use and maintain
- Scalable and modular
- Can be configured for any combination or pollutant

### Applications

- Parking lots
- High traffic areas
- Production and material storage areas

> **Enpurion MT media for metals and oils**

> **Enpurion MX media for phosphorus, pH**

> **Enpurion BioBlend for organics**

> **ZnIX ion exchange for zinc, and copper**

> **Enpurion CLR for turbidity and TSS**



Engineered media for site-specific pollutants

High capacity design

Up to 5 different sorption media

Optional sample port

Liner captures oils and debris

Mesh base prevents clogging

**Target pollutants:**

- ✔ **Zinc & copper**
- ✔ **Turbidity & pH**
- ✔ **Pb, Al and Fe**
- ✔ **Phosphorus**
- ✔ **Emulsified oils**
- ✔ **Suspended solids**

info@enpurion.com
253-922-8823

[www.enpurion.com](http://www.enpurion.com)
©2022 Lean Environment Inc

# enpurion

# FlexBasin™ Materials Menu

**Enpurion MT metals treatment media**

Organic cellulose material activated to cation exchange to 0.78 EQ / Kg - absorbs organics and particles

Treatment for zinc, copper, iron and lead, emulsified and free petroleum hydrocarbons

**Enpurion MX media for phosphorus, pH**

Calcium based mineral blend formulated for pH buffer to equilibrium 8.5 SU

Treats acidic or basic influent, captures phosphorus, copper and other nutrients

**Enpurion BioBlend for organics and oils**

Organic cellulose, bio-char and granular activated carbon loading up to 0.25 L/kg media

Surface adsorption and bulk absorption of emulsified and free petroleum hydrocarbons

**ZnIX ion exchange for zinc, and copper**

Commercial cation exchange resin (water softener) with exchange capacity =1.8 EQ/kg

High capacity resin pillows for longer residence times and higher cation metals loading

**Enpurion CLR for turbidity and TSS**

Organic cellulose material activated to absorb anionic suspended particles

Muddy or turbid water with silicate clays or silts, used in conjunction with MX pillows

**Polypropylene geotextile**

Heavy polypropylene felt liner

High particle and oil retention

**Open weave fiber screen**

FRP fabric allows open flow

Better for heavy oil in influent

**Oil absorbent pads**

White poly topper pads

Used to protect media pillows

**Polyethylene fine screen**

Fine mesh for high flow

High flow with fine media

**Natural fiber geotextile**

Jute or burlap pillow liners

Used for compostible pillows

# Enpurion ZnIX

Excellence by design

## ZnIX Ion Exchange Pillows and Socks for Zinc Treatment at Point Discharge

## Proven Results

- Engineered Ion Exchange technology for proven zinc removal
- Configure for any flow rates or loading
- Effective on other cationic heavy metals
- Exceptional removal ratings, to < 0.01 mg/l
- 100% NSF-Approved food-grade ingredients
- Available in full IX or softening formulations
- Can be combined with existing systems to improve performance and reduce O&M costs

.

## Advantages

- Passive system with no power demand
- Pillows can be layered in series for managing mixed pollutants
- Available in socks or pillows for in-pipe applications
- Capacity up to 1.9 Eq/L or 50,000 mg/L Zn

## Applications

- Parking lot catch basins
- Down spouts
- Tank systems
- End-of-pipe treatment

## How does the Enpurion ZnIX system work?



DVB ion exchange resin

$Zn^{2+}$    $Zn^{2+}$

negative charge

$Zn^{2+}$

direction of flow

$Zn^{2+}$

$Zn^{2+}$

$Zn^{2+}$

positive metal ions

$Zn^{2+}$

magnetic attraction

clean water

$Zn^{2+}$

$Zn^{2+}$




### Hydraulic Properties:



info@enpurion.com
253-922-8823

www.enpurion.com
©2019 Lean Environment Inc

**enpurion**

**EXHIBIT D**

## ESTES EXPRESS LINES, INC. FACILITY ACCESS VISITOR RELEASE FORM AND WAIVER OF LIABILITY

I acknowledge, agree, and represent that I am aware that the Estes Express Lines, Inc. facilities located at 14727 Alondra Boulevard, La Mirada, CA 90638, San Fernando Road, Sun Valley, CA 91352, and 1531 Blinn Ave., Wilmington, CA 90744 (the "Sites") owned, operated or managed by Estes Express Lines, Inc. ("Estes") are freight transfer facilities, which can be a dangerous environment, despite the safety precautions taken by Estes.  To access the Sites, I further agree and warrant as follows:

1. To the fullest extent permitted by law, I hereby release, waive, and discharge, on behalf of myself, my heirs, assigns, guardians, and legal representatives, any and all claims, damages, or losses I may have against Estes, its individual officers, administrators, employees and agents, acting officially or otherwise, arising from any and all injuries that I may incur during my visit to the Sites, including, but not limited to, liability for property damage or loss, or bodily, personal or mental injury, including death, and further covenant that I will not sue Estes for any and all injuries or claims I may suffer during any Site visit.

2. I agree to hold harmless and indemnify Estes against any liability or damages that Estes may incur arising from my negligence during my visit to the Sites.

3. I acknowledge that it is my sole responsibility to carefully evaluate the risks inherent in visiting the Sites and that I have fully considered those risks, including, without limitation, dangers posed by willful or negligent conduct of myself .

4. I acknowledge that I am not an employee of Estes or any of its agents during my visit to the Sites.

5. I agree that I shall use due care upon entry onto the Sites, not undertake any act that may result in injury, not interfere with any activities at the Sites, or touch or handle any materials found at the Sites.

6. I agree that the following precautions must be observed during the site visits:
   a. Safety vests, and appropriate flat soled footwear must be worn;
   b. All warning signs and barricades must be obeyed;
   c. Do not stray from approved path for ingress and egress;
   d. Smoking is prohibited;
   e. Do not touch or walk on wires, piping, ductwork, conduit, or other construction materials of any kind;
   f. Climbing on ladders or scaffold is prohibited;
   g. Do not lean on or reach beyond any handrails or barricades

h. Be aware that walking surfaces may be uneven or have other impediments and that extreme care must be taken with each step.

7. I agree that if any portion of this document is held invalid, the remaining provisions shall be binding and continue in full force and effect.

8. I acknowledge that the Site visits and their activities have been explained to me, and all my questions answered to my complete satisfaction.

**I have read the Visitor Release Form and Waiver of Liability carefully, understand its significance, and voluntarily agree to all its terms.**

**THIS IS A RELEASE OF LEGAL RIGHTS. READ CAREFULLY BEFORE SIGNING**

Visitor (print name):_____

Signature:_____

Date:_____

**NOTE**: All required signatures must be completed and this Form returned before the Visitor may visit the Site.